# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT INDIANA

CONNIE QUINTANA, on behalf of
herself and all others similarly situated,

        Plaintiff,

   v.

HERFF JONES, LLC,

        Defendant.

Case No. _____1:21-cv-1350_____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Connie Quintana, individually and on behalf of the Classes defined below of similarly situated persons ("Plaintiff"), alleges the following against Herff Jones, LLC ("Herff Jones" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. There are more than 100 putative Class Members.

2.    This Court has personal jurisdiction over Defendant because it regularly conducts business in Indiana, has sufficient minimum contacts in Indiana, including its principal place of business, and intentionally avails itself of this jurisdiction by marketing and selling products and services in Indiana.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, including (upon information and belief) the data security incident involving Defendant's website. Defendant caused harm to Plaintiff and Class Members through its actions in this District.

### THE DATA BREACH

4.      On May 16, 2021, the electronic data security company Bleeping Computer published a report entitled "Herff Jones credit card breach impacts college students across the US." *See* https://www.bleepingcomputer.com/news/security/herff-jones-credit-card-breach-impacts-college-students-across-the-us/ (last accessed May 24, 2021).

5.      The report stated that "Graduating students from several universities in the U.S. have been reporting fraudulent transactions after using payment cards at popular cap and gown maker Herff Jones." (hereinafter the "Data Breach").

6.      Herff Jones customers across the United States have suffered real and imminent harm as a direct consequence of Defendant's conduct, which includes: (a) refusing to take adequate and reasonable measures to ensure its data systems were protected; (b) refusing to take available steps to prevent the breach from happening; (c) failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard customers' personal and financial information; and (d) failing to provide timely and adequate notice of the data breach.

7.      On information and belief, as a result of the Data Breach, the personal information, including, but not limited to, payment card data ("PCD"), of thousands of Herff Jones customers (mainly students), has been exposed to criminals for misuse.

8.     The injuries suffered by Plaintiff and the proposed Classes as a direct result of the

Data Breach include, *inter alia*:

  a.     Unauthorized charges on their payment card accounts;

  b.     Theft of their personal and financial information;

  c.     Costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

  d.     Loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

  e.     Costs associated with time spent and the loss of productivity from taking time to address and attempting to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the data breach;

  f.     The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their personal information and payment card data ("PCD") being placed in the hands of criminals and already misused via the

sale of Plaintiff's and Class Members' information on the Internet black market;

g.   Damages to and diminution in value of their personal and financial information entrusted to Herff Jones for the sole purpose of making purchases from Herff Jones and with the mutual understanding that Herff Jones would safeguard Plaintiff's and Class Members' data against theft and not allow access to and misuse of their information by others;

h.   Money paid to Herff Jones during the period of the data breach in that Plaintiff and Class Members would not have purchased from Herff Jones had Defendant disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' personal information and PCD and had Herff Jones provided timely and accurate notice of the data breach; and

i.   Continued risk to their personal information and PCD, which remains in the possession of Herff Jones, and which is subject to further breaches so long as Herff Jones continues to fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data in its possession.

9.    Examples of the harms to Herff Jones customers as a direct and foreseeable consequence of its conduct include the experiences of the representative Plaintiff, which are described below.

**PARTIES**

10.    Plaintiff Connie Quintana is a resident of Fillmore, California. She is (and was during the period of the data breach) a citizen of the State of California.

11.     Defendant Herff Jones is a domestic limited liability company organized under the laws of the State of Indiana, with a principal place of business at 4625 W. 62nd Street, Indianapolis, IN, 46268, USA.

## PLAINTIFF'S EXPERIENCES

12.     In April of 2021, Plaintiff purchased her graduation wardrobe (e.g., cap and gown) from Defendant's website. *See* Email Confirmation of Purchase, attached hereto as Exhibit A.

13.     Plaintiff used one of her payment cards to make this purchase.

14.     Subsequent to making this purchase, Plaintiff received a notification from her university informing her that Herff Jones had sustained a data breach and that Plaintiff should be on the lookout for suspicious activity on her payment card that she used at Herff Jones. *See* notification attached hereto as Exhibit B. Plaintiff never received a similar notification from Herff Jones, despite the company knowing about the data breach.

15.     The notification letter from her university informed Plaintiff that unauthorized individuals may have gained access to her name and PCD (collectively, the "Private Information") that she used to make her purchase on Defendant's website. *See* Exhibit B.

16.     Since her purchase on Defendant's website, Plaintiff has received security alerts from her bank indicating that it has detected "unusual activity" on Plaintiff's payment card. In particular, on May 13, 2021, there were at least three charges to "Steamgames.com" that were charged to Plaintiff's card in the amounts of $100.00, $4.99, and $4.99. Plaintiff never made nor authorized these charges. The charges were the result of fraudulent transactions.

17.     As a result of the fraudulent transactions, Plaintiff was forced to put a freeze on her payment card and spend time dealing with her bank to address the fraudulent transactions.

18. Plaintiff Quintana suffered actual injury in the form of time spent dealing with fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

19. Plaintiff Quintana suffered actual injury in the form of fraudulent charges and the loss of use of funds while disputing such charges and additional damages resulting from such loss of use.

20. Plaintiff Quintana was not reimbursed for the loss of use of, loss of access to, or restrictions placed upon her account and the resulting loss of use of her own funds that occurred as a result of the Data Breach.

21. Plaintiff would not have used her payment card to make purchases from the Herff Jones website—indeed, she would not have shopped with Herff Jones at all during the period of the Data Breach—had Herff Jones disclosed that it lacked adequate computer systems and data security practices to safeguard customers' personal and financial information from theft, and that it was subject to an ongoing data breach at the time Plaintiff made her purchase. Herff Jones also failed to provide Plaintiff with timely and accurate notice of the data breach.

22. Plaintiff suffered actual injury from having her personal information and PCD compromised and/or stolen as a result of the Data Breach.

23. Plaintiff suffered actual injury and damages in paying money to and purchasing products from Herff Jones during the Data Breach that she would not have paid or purchased had Herff Jones disclosed that it lacked computer systems and data security practices adequate to safeguard customers' personal and financial information and had Herff Jones provided timely and accurate notice of the Data Breach.

24. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her personal and financial information—a form of intangible property that the Plaintiff

entrusted to Herff Jones for the purpose of making purchases on its website and which was compromised in, and as a result of, the Data Breach.

25.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their personal and financial information being placed in the hands of criminals who have already misused such information stolen in the Data Breach via sale of Plaintiff's and Class Members' personal and financial information on the Internet black market.

26.    Plaintiff has a continuing interest in ensuring that her PCD, which remains in the possession of Herff Jones, is protected and safeguarded from future breaches.

## STATEMENT OF FACTS

27.    Herff Jones is a company that manufactures and sells educational recognition and achievement products and motivational materials.

28.    Herff Jones maintains production facilities across the United States as well as in Canada, and has a network of over 700 independent sales representatives.

29.    In connection with the sale of its products, Herff Jones provides consumers with a privacy policy that informs them how their personally identifying information will be used. In its privacy policy, Herff Jones promises not to disclose consumers' information without their consent. Herff Jones also promises that it has "implemented administrative, technical, and physical security measures to protect against the loss, misuse and/or alteration of your information." [1]

---

[1] *See* https://www.herffjones.com/about/privacy/#CA ("How we use your information.").

30.     According to a report published on May 16, 2021, "[g]raduating students from several universities in the U.S. have been reporting fraudulent transactions after using payment cards at popular cap and gown maker Herff Jones."[2]

31.     In the wake of the reports from students, the company started an investigation to determine the extent of the data breach.

32.     On information and belief, it was determined the issue is affecting students across the U.S. at universities in at least the following states: Indiana (Purdue, IU), Boston, Maryland (Towson University), Houston (UH, UHD), Illinois, Delaware, Michigan, Wisconsin, Pennsylvania (Lehigh, Misericordia), New York (Cornell), Arizona, North Carolina (Wake Forest), Florida (State University), California (Sonoma State).[3]

33.     According to reports, "Herff Jones was completely unaware of the breach until students started to complain on social media about their fraudulent charges to their payment cards."[4]

34.     The common denominator was that the victims were graduating students that had purchased commencement gear at Herff Jones. According to social media posts, some of the victims had to cancel their payment cards and address the fraudulent charges with their respective banks:

---

[2] https://www.bleepingcomputer.com/news/security/herff-jones-credit-card-breach-impacts-college-students-across-the-us/.
[3] *Id.*
[4] *Id*.



35. The reports further claimed that "the students complained of fraudulent charges varying from tens of U.D. dollars to thousands. While most reports mention losses between $80 and $1,200, one student stated that a friend of theirs was charged $4,000."[5]

36. One senior at Cornell University stated that they had to cancel their credit card because it had been stolen and fraudsters tried to charge $3,000 to "asics" and used it on adult content subscription service OnlyFans.[6]

37. According to one report, "[i]t is unclear when the breach at Herff Jones occurred but some of the earliest transactions date from the beginning of the month. Multiple students said they had purchased graduation items in April."[7]

---

[5] *Id.*

[6] https://www.reddit.com/r/Purdue/comments/n56ga5/graduating_seniors_look_here_herff_jones_data/gxmhayq/?utm_source=share&utm_medium=web2x&context=3.

[7] https://www.bleepingcomputer.com/news/security/herff-jones-credit-card-breach-impacts-college-students-across-the-us/.

38.    On information and belief, Herff Jones still has not sent out notice of the Data Breach to individual affected victims.

39.    Instead, in a Cyber Security Incident Update on its website, Herff Jones admitted the following:

> Herff Jones recently became aware of suspicious activity involving certain customers' payment card information. We promptly launched an investigation and engaged a leading cybersecurity firm to assist in assessing the scope of the incident. We have taken steps to mitigate the potential impact and notified law enforcement. Herff Jones is committed to the privacy and security of its customers and we take this responsibility seriously.
>
> During the course of our investigation, which is ongoing, we identified theft of certain customers' payment information.
>
> We sincerely apologize to those impacted by this incident. We are working diligently to identify and notify impacted customers. In the meantime, we have a dedicated customer service team that can be reached by calling 855-535-1795 between 9 a.m. and 9 p.m. EDT Monday through Friday.[8]

40.    Indeed, despite Defendant's promises that it: (i) would not disclose consumers' Private Information; and (ii) would protect consumers' Private Information with adequate security measures, it appears that Herff Jones did not even implement basic security measures such as encrypting its payment data, as evidenced by the numerous fraudulent transactions reported by Plaintiff and other Class Members.

41.    In a debit or credit card purchase transaction, card data must flow through multiple systems and parties to be processed. Generally, the cardholder presents a credit or debit card to an e-commerce retailer (through an e-commerce website) to pay for merchandise. The card is then "swiped" and information about the card and the purchase is stored in the retailer's computers and then transmitted to the acquirer or processor (*i.e.*, the retailer's bank). The acquirer relays the transaction information to the payment card company, who then sends the information to the issuer

---

[8] https://content.herffjones.com/about/press-releases/herff-jones-cyber-security-incident-update/.

(*i.e.*, cardholder's bank). The issuer then notifies the payment card company of its decision to authorize or reject the transaction. See graphic below:[9]



| 1 | The consumer selects a card for payment. The cardholder data is entered into the merchant's payment system, which could be the point-of-sale (POS) terminal/software or an e-commerce website. |
| 2 | The card data is sent to an acquirer/payment processor, whose job it is to route the data through the payments system for processing. With e-commerce transactions, a "gateway" provider may provide the link from the merchant's website to the acquirer. |
| 3 | The acquirer/processor sends the data to the payment brand (e.g. Visa, MasterCard, American Express, etc.) who forward it to the issuing bank/issuing bank processor |
| 4 | The issuing bank/processor verifies that the card is legitimate, not reported lost or stolen, and that the account has the appropriate amount of credit/funds available to pay for the transaction. |
| 5 | If so, the issuer generates an authorization number and routes this number back to the card brand. With the authorization, the issuing bank agrees to fund the purchase on the consumer's behalf. |
| 6 | The card brand forwards the authorization code back to the acquirer/processor. |
| 7 | The acquirer/processor sends the authorization code back to the merchant. |
| 8 | The merchant concludes the sale with the customer. |

42.     There are two points in the payment process where sensitive cardholder data is at risk of being exposed or stolen: pre-authorization when the merchant has captured a consumer's data and it is waiting to be sent to the acquirer; and post-authorization when cardholder data has been sent back to the merchant with the authorization response from the acquirer, and it is placed into some form of storage in the merchant's servers.

---

[9] Source: "Payments 101: Credit and Debit Card Payments," a white paper by First Data, at: https://www.firstdata.com/downloads/thought-leadership/payments101wp.pdf (last accessed Oct. 27, 2020).

43.    Encryption mitigates security weaknesses that exist when cardholder data has been stored, but not yet authorized, by using algorithmic schemes to transform plain text information into a non-readable format called "ciphertext." By scrambling the payment card data the moment it is "swiped," hackers who steal the data are left with useless, unreadable text in the place of payment card numbers accompanying the cardholder's personal information stored in the retailer's computers.

44.    The financial fraud suffered by Plaintiff and other customers demonstrates that Herff Jones chose not to invest in the technology to encrypt PCD at point-of-sale to make its customers' data more secure; failed to install updates, patches, and malware protection or to install them in a timely manner to protect against a data security breach; and/or failed to provide sufficient control employee credentials and access to computer systems to prevent a security breach and/or theft of PCD.

45.    A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal information:[10]

---

[10] Jason Steele, *Credit Card and ID Theft Statistics* (Oct. 23, 2017), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Oct. 27, 2020).



Plaintiff and the Class have experienced one or more of these harms as a result of the data breach.

46.     What's more, theft of Private Information is also gravely serious. Private Information is a valuable property right. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

47.     Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when personal information or PCD is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

48.    Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

49.    There is a strong probability that entire batches of stolen payment card information have been dumped on the black market or are yet to be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts for many years to come.

50.    Plaintiff and Members of the Classes defined below have or will suffer actual injury as a direct result of Herff Jones's data breach. In addition to fraudulent charges and damage to their credit, many victims spent substantial time and expense relating to:

      a.    Finding fraudulent charges;

      b.    Canceling and reissuing cards;

      c.    Purchasing credit monitoring and identity theft prevention;

      d.    Addressing their inability to withdraw funds linked to compromised accounts;

      e.    Removing withdrawal and purchase limits on compromised accounts;

      f.    Taking trips to banks and waiting in line to obtain funds held in limited accounts;

---

[11] *See* U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 4, 2007), https ://www.gao.gov/assets/gao-07-737.pdf (last visited May 24, 2021) ("GAO Report").

g.  Spending time on the phone with or at the financial institution to dispute fraudulent charges;

h.  Resetting automatic billing instructions; and/or

i.  Paying late fees and declined payment fees imposed as a result of failed automatic payments.

51.  Plaintiff and Class Members have been damaged by the compromise of their PCD in the Data Breach.

52.  Plaintiff's PCD was compromised as a direct and proximate result of the Data Breach, and subsequently used for fraudulent transactions.

53.  As a direct and proximate result of the Data Breach, Plaintiff's PCD was "skimmed" and exfiltrated and is in the hands of identity thieves and criminals, as evidenced by the fraud perpetrated against Plaintiff described above.

54.  As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered actual fraud.

55.  As a direct and proximate result of Herff Jones's conduct, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud. Plaintiff now have to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting her financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

56.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

57.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

58.    Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. The implied contractual bargain entered into between Plaintiff and Herff Jones included Defendant's contractual obligation to provide adequate data security, which Defendant failed to provide. Thus, Plaintiff and the Class Members did not get what they paid for.

59.    Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

60.    Plaintiff and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    Trespass, damage to and theft of their personal property including personal information and PCD;

b.    Improper disclosure of their personal information and PCD property;

c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by customers' personal information and PCD being placed in the hands of criminals and having been already misused via the sale of such information on the Internet black market;

d.    Damages flowing from Herff Jones's untimely and inadequate notification of the data breach;

e.    Loss of privacy suffered as a result of the data breach;

f.    Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.    Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market; and

h.    The loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money customers were permitted to obtain from their accounts.

61.    The substantial delay in providing notice of the Data Breach deprived Plaintiff and the Class Members of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach. As a result of Defendant's delay in detecting and notifying consumers of the Data Breach, the risk of fraud for Plaintiff and Class Members was and has been driven even higher.

## CLASS ALLEGATIONS

62.    Plaintiff brings this action on behalf of themselves and on behalf of all other persons similarly situated ("the Class").

63.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**<u>Nationwide Class:</u>**

All residents of the United States whose personal information was compromised as a result of the Data Breach.

**California Subclass:**

All residents of California whose personal information was compromised as a result of the Data Breach.

64.     Excluded from each of the above Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

65.     Each of the proposed Classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

66.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of customers of Herff Jones whose data was compromised in the Data Breach.

67.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.      Whether Herff Jones engaged in the conduct alleged herein;

b.      Whether Herff Jones's conduct violated the state consumer protection laws invoked below;

c.      Whether Herff Jones had a legal duty to adequately protect Plaintiff's and Class Members' personal information;

d.      Whether Herff Jones breached its legal duty by failing to adequately protect Plaintiff's and Class Members' personal information;

e.  Whether Herff Jones had a legal duty to provide timely and accurate notice of the data breach to Plaintiff and Class Members;

f.  Whether Herff Jones breached its duty to provide timely and accurate notice of the data breach to Plaintiff and Class Members;

g.  Whether Plaintiff and Class Members are entitled to recover actual damages and/or statutory damages; and

h.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

68.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach.

69.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including data breach class actions.

70.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

71.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

72.     Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Herff Jones has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

73.     Finally, all members of the purposed Classes are readily ascertainable. Herff Jones has access to addresses and other contact information for millions of members of the Classes, which can be used to identify Class Members.

## COUNT I

### NEGLIGENCE
### (on behalf of Plaintiff and the Nationwide Class, or, alternatively, Plaintiff and California Subclass)

74.     Plaintiff realleges, as if fully set forth, the allegations of the preceding paragraphs.

75.     Herff Jones solicited and gathered personal information, including PCD, of Plaintiff and the Nationwide Negligence Class or, alternatively, the California Subclass (collectively, the "Class" as used in this Count) to facilitate sales transactions.

76.     Herff Jones knew, or should have known, of the risks inherent in collecting the personal information of Plaintiff and the Class Members and the importance of adequate security.

On information and belief, Herff Jones received warnings that hackers routinely attempted to access and acquire personal information, and PCD in particular, without authorization. Herff Jones also knew or should have known about numerous, well-publicized payment card data breaches involving other national retailers.

77.    Herff Jones owed duties of care to Plaintiff and the Class Members whose personal information was entrusted to it. Herff Jones's duties included the following:

      a.      To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting personal information and PCD in its possession;

      b.      To protect customers' personal information and PCD using reasonable and adequate security procedures and systems that are compliant with the PCI-DSS standards and consistent with industry-standard practices;

      c.      To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, and

      d.      To promptly notify Plaintiff and Class Members of the data breach.

78.    By collecting this data, and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property, to prevent disclosure of the Private Information, and to safeguard the Private Information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

79.    Because Herff Jones knew that a breach of its systems would damage millions of its customers, including Plaintiff and Class Members, it had a duty to adequately protect their personal information.

80.    Herff Jones owed a duty of care not to subject Plaintiff and the Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

81.    Herff Jones had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' personal information.

82.    Herff Jones knew, or should have known, that its computer systems did not adequately safeguard the personal information of Plaintiff and the Class Members.

83.    Herff Jones breached its duties of care by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the personal information of Plaintiff and the Class Members.

84.    Herff Jones breached its duties of care by failing to provide prompt notice of the data breach to the persons whose personal information was compromised.

85.    Herff Jones acted with reckless disregard for the security of the personal information of Plaintiff and the Class Members because Herff Jones knew or should have known that its computer systems and data security practices were not adequate to safeguard the personal information that that it collected, which Herff Jones knew or should have known hackers were attempting to access.

86.    Herff Jones acted with reckless disregard for the rights of Plaintiff and the Class Members by failing to provide prompt and adequate individual notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use the personal information compromised in the data breach.

87.    Herff Jones had a special relationship with Plaintiff and the Class Members. Plaintiff's and the Class Members' willingness to entrust Herff Jones with their personal

information was predicated on the understanding that Herff Jones would take adequate security precautions. Moreover, only Herff Jones had the ability to protect its systems (and the personal information that it stored on them) from attack.

88.     Herff Jones own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their personal information. Herff Jones's misconduct included failing to:

    a.    Secure its e-commerce website;

    b.    Secure access to its servers;

    c.    Comply with industry standard security practices;

    d.    Follow the PCI-DSS standards;

    e.    Encrypt PCD at the point-of-sale and during transit;

    f.    Employ adequate network segmentation;

    g.    Implement adequate system and event monitoring;

    h.    Utilize modern payment systems that provided more security against intrusion;

    i.    Install updates and patches in a timely manner; and

    j.    Implement the systems, policies, and procedures necessary to prevent this type of data breach.

89.     Herff Jones also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and the Class Members' personal information and promptly notify them about the data breach.

90.     Herff Jones breached the duties it owed to Plaintiff and Class Members in numerous ways, including:

a.   By creating a foreseeable risk of harm through the misconduct previously described;

b.   By failing to implement adequate security systems, protocols and practices sufficient to protect personal information both before and after learning of the data breach;

c.   By failing to comply with the minimum industry data security standards, including the PCI-DSS, during the period of the data breach; and

d.   By failing to timely and accurately disclose to each Class Member that the personal information of Plaintiff and the Class had been improperly acquired or accessed.

91.   But for Herff Jones's wrongful and negligent breach of the duties it owed Plaintiff and the Class Members, their personal and financial information either would not have been compromised or they would have been able to prevent some or all of their damages.

92.   As a direct and proximate result of Herff Jones's negligent conduct, Plaintiff and the Class Members have suffered damages and are at imminent risk of further harm.

93.   The injury and harm that Plaintiff and Class Members suffered (as alleged above) was reasonably foreseeable.

94.   The injury and harm that Plaintiff and Class Members suffered (as alleged above) was the direct and proximate result of Herff Jones's negligent conduct.

95.   Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II

### NEGLIGENCE *PER SE*
**(on behalf of Plaintiff and the Nationwide Class or,**
**alternatively, Plaintiff and the California Subclass)**

96.     Plaintiff realleges, as if fully set forth, the allegations of preceding paragraphs 1 through 73.

97.     Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Herff Jones had a duty to provide fair and adequate computer systems and data security to safeguard the personal information, including PCD, of Plaintiff and the Class Members.

98.     The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Herff Jones, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also form part of the basis of Herff Jones's duty in this regard.

99.     Herff Jones solicited, gathered, and stored personal information, including PCD, of Plaintiff and the Nationwide Class or, alternatively, the California Subclass (collectively, the "Class" as used in this Count) to facilitate sales transactions that affect commerce.

100.     Herff Jones violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiff and the Class and not complying with applicable industry standards, as described herein.

101.     Herff Jones's violation of the FTCA constitutes negligence *per se*.

102.     Plaintiff and the Class are within the class of persons that the FTCA was intended to protect.

103.     The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses,

which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

104. As a direct and proximate result of Herff Jones's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending.

105. Herff Jones breached its duties to Plaintiff and the Class under these states' laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class Members' personal information.

106. Herff Jones's violation of the FTCA constitutes negligence *per se*.

107. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

108. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

109.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT III

**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiff and the Nationwide Class, or,**
**alternatively, Plaintiff and the California Subclass)**

110.    Plaintiff realleges, as if fully set forth, the allegations of preceding paragraphs 1 through 73.

111.    When Plaintiff and the Members of the Nationwide Class or, alternatively, the California Subclass (collectively, the "Class" as used in this Count), provided their personal information to Herff Jones in making purchases on its website, they entered into implied contracts by which Herff Jones agreed to protect their personal information and timely notify them in the event of a data breach.

112.    Herff Jones invited its customers, including Plaintiff and the Class, to make purchases on its website using payment cards in order to increase sales by making purchases more convenient.

113.    An implicit part of the offer was that Herff Jones would safeguard the personal information using reasonable or industry-standard means and would timely notify Plaintiff and the Class in the event of a data breach.

114.    Herff Jones also affirmatively represented in its Privacy Policy that it protected the Private Information of Plaintiff and the Class in several ways, as described above.

115.    Based on the implicit understanding and also on Herff Jones's representations, Plaintiff and the Class accepted the offers and provided Herff Jones with their personal information

by using their payment cards in connection with purchases on the Herff Jones website during the period of the data breach.

116.    Herff Jones manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiff's and Class Members' Private Information through, among other things, its Privacy Notice.

117.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

118.    Plaintiff and Class Members would not have provided their personal information to Herff Jones had they known that Herff Jones would not safeguard their personal information as promised or provide timely notice of a data breach.

119.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Herff Jones.

120.    Herff Jones breached the implied contracts by failing to safeguard Plaintiff's and Class Members' personal information and failing to provide them with timely and accurate notice when their personal information was compromised in the data breach.

121.    The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of Herff Jones's breaches of its implied contracts with them.

## COUNT IV

### UNJUST ENRICHMENT
### (on behalf of Plaintiff and the Nationwide Class, or,
### alternatively, Plaintiff and the California Subclass)

122.    Plaintiff realleges, as if fully set forth, the allegations of preceding paragraphs 1 through 73.

123.    This count is plead in the alternative to Count III above.

124.    Plaintiff and Members of the Nationwide Class or, alternatively, the members of the California Subclass (collectively, the "Class" as used in this Count), conferred a monetary benefit on Herff Jones. Specifically, they made purchases from Herff Jones and provided Herff Jones with their personal information by using their payment cards for the purchases that they would not have made if they had known that Herff Jones did not provide adequate protection of their personal information.

125.    Herff Jones knew that Plaintiff and the Class conferred a benefit on the Herff Jones website. Herff Jones profited from their purchases and used their personal information for its own business purposes.

126.    Herff Jones failed to secure the Plaintiff's and Class Members' personal information, and therefore was unjustly enriched by the purchases made by Plaintiff and the Class that they would not have made had they known that Herff Jones did not keep their personal information secure.

127.    Plaintiff and the Class have no adequate remedy at law.

128.    Under the circumstances, it would be unjust for Herff Jones to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on it.

129.    Herff Jones should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and Class Members proceeds that it unjustly received from them. In the alternative, Herff Jones should be compelled to refund the amounts that Plaintiff and the Class overpaid.

**<u>COUNT V</u>**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

130.    Plaintiff restates and realleges paragraphs 1 through 73 as if fully set forth herein.

131.    Herff Jones is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

132.    Herff Jones violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

133.    Herff Jones's unlawful, unfair acts and deceptive acts and practices include:

a.    Herff Jones failed to implement and maintain reasonable security measures to protect Plaintiff's and California Subclass Members' private information from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.    Herff Jones failed to:

i.    Secure its e-commerce website;

ii.    Secure access to its servers;

iii.    Comply with industry standard security practices;

iv.    Follow the PCI-DSS standards;

v.    Encrypt PCD at the point-of-sale and during transit;

vi.    Employ adequate network segmentation;

vii.      Implement adequate system and event monitoring;

viii.     Utilize modern payment systems that provided more security against intrusion;

ix.     Install updates and patches in a timely manner; and

x.     Implement the systems, policies, and procedures necessary to prevent this type of data breach.

c.     Herff Jones failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and California Subclass Members whose private information has been compromised;

d.     Herff Jones's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTCA, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5, *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*;

e.     Herff Jones's failure to implement and maintain reasonable security measures also lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and California Subclass Members could not know of Herff Jones's inadequate security and compromise of its e-commerce site, consumers could not have reasonably avoided the harms that Herff Jones caused;

f.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and the California Subclass Members' private information and PCD, including by implementing and maintaining reasonable security measures;

g.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the California Subclass Members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*;

h.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the California Subclass Members' private information and PCD;

i.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the California Subclass Members' private information and PCD, including duties imposed by the FTCA, 15 U.S.C. § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*;

j.    Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82; and

k.    Among other ways to be discovered and proved at trial.

134.    Herff Jones's representations and omissions to Plaintiff and California Subclass Members were material because they were likely to deceive reasonable consumers about the

adequacy of Herff Jones's data security and ability to protect the privacy of consumers' personal information and PCD.

135.    Herff Jones intended to mislead Plaintiff and the California Subclass Members and induce them to rely on its misrepresentations and omissions.

136.    Had Herff Jones disclosed to Plaintiff and the California Subclass Members that its data systems were not secure and, thus, vulnerable to attack, or disclosed that its website was compromised by a hacker, Herff Jones would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Herff Jones received, maintained, and compiled Plaintiff's and the California Subclass Members' personal information and PCD as part of the services and goods Herff Jones provided without advising Plaintiff and the California Subclass Members that Herff Jones's data security practices were insufficient to maintain the safety and confidentiality of Plaintiff's and the California Subclass Members' Private Information and PCD. Accordingly, Plaintiff and the California Subclass Members acted reasonably in relying on Herff Jones's misrepresentations and omissions, the truth of which they could not have discovered.

137.    Herff Jones acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and the California Subclass Members' rights.

138.    As a direct and proximate result of Herff Jones's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

139.    Plaintiff and California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Herff Jones's unfair, unlawful, and fraudulent business practices or use of their Private Information and PCD; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

140.    Plaintiff and California Subclass Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all California Class Members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Classes described above, seek the following relief:

a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

b.    Judgment in favor of Plaintiff and the Classes awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, attorney's fees, statutory costs, and such other and further relief as is just and proper;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.    An order requiring Herff Jones to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.    A judgment in favor of Plaintiff and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, and

f.    An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: May 26, 2021                    Respectfully submitted,


/s/ *Gary M. Klinger*
Gary M. Klinger
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (202) 429-2290
Fax: (202) 429-2294
gklinger@masonllp.com

Gary E. Mason (*pro hac vice* forthcoming)
David Lietz (*pro hac vice* forthcoming)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Phone: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

Aaron Siri (*pro hac vice* forthcoming)
Mason A. Barney (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
200 Park Avenue, Seventeenth Floor
New York, New York 10166
Phone: (212) 532-1091
aaron@sirillp.com
mbarney@sirillp.com

*Attorneys for Plaintiff and the Proposed Classes*